## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

MALIBU MEDIA, LLC,

           Plaintiff,

v.

MARK FITZPATRICK,

           Defendant.

_____/

Case No. 1:12-CV-22767

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Mark Fitzpatrick, by and through his attorneys, submits this response to Plaintiff Malibu Media's ("Malibu") motion for summary judgment [DE 25] ("Malibu Motion"), and states as follows:

## PRELIMINARY STATEMENT

In its Motion, Malibu inexplicably seeks summary judgment on its claim for copyright infringement. In *Bubble Gum*, the court made clear that a subscriber does not equate to an infringer. *Bubble Gum Prods., LLC v. Does 1-80,* 12-20367-CLV-SE1TZ, 2012 WL 2953309 (S.D. Fla. July 19, 2012) ("[T]he subscriber associated with the IP address may not necessarily be the alleged infringer."). Yet, after months of discovery, Malibu has failed to extract a single additional fact suggesting that Defendant in this case is guilty of infringement. Accordingly, Malibu's summary judgment should be denied and Defendant's granted. **First,** as discussed in depth in his motion for summary judgment ("Defendant's Motion"), there is no evidence that Defendant Mark Fitzpatrick committed the infringement. Malibu's arguments are directly belied by the facts and in many cases Malibu makes tenuous conclusions not supported by evidence.

**Second,** Malibu's request for an adverse inference is completely improper and based on a drastic

misinterpretation of both the facts and the law. **Third,** Malibu's lengthy briefing regarding Defendant's affirmative defenses are premature and need not be addressed as Defendant is entitled to summary judgment on the sole count of copyright infringement.

## STANDARD OF REVIEW

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *MPS Entm't, LLC v. Abercrombie & Fitch Stores, Inc.*, 11-24110-CIV, 2013 WL 3288039 (S.D. Fla. June 28, 2013) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can only be entered on a claim if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (*quoting* Fed. R. Civ. P. 56(a)). Additionally, the Court "must resolve all reasonable doubts about the facts in favor of the non-movant." *Shire Dev. LLC v. Watson Pharmaceuticals, Inc.*, 12-60862-CIV, 2013 WL 1180418 (S.D. Fla. Mar. 21, 2013) (*quoting United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of America*, 894 F.2d 1555, 1558 (11th Cir.1990)).

## LEGAL AUTHORITIES

### I.  Mark Fitzpatrick Is Not The Alleged Infringer And As Such Is Not Guilty Of Copyright Infringement

As discussed in Defendant's Motion, every piece of record evidence demonstrates that Mark Fitzpatrick is not the alleged infringer. *See* Defendant's Motion [DE 24] at 4-11. Notwithstanding the undisputed record, Malibu makes four arguments that purport to suggest that Defendant downloaded the copyrighted works. As a preliminary matter, Malibu contends that it identified an infringing IP address and then tied that IP address to Defendant through his Internet Service Provider, Hotwire Communications. *See* Malibu Motion [DE 25] at 4-5. The defects in Malibu's investigation process were fully addressed in Defendant's Motion and

therefore need not be repeated here.  *See* Defendant's Motion [DE 24] at 9-11 (those sections are incorporated in full herein).  Plaintiff makes three additional arguments: **(1)** Defendant's wireless router was password protected and even if it were not, it could not be accessed by others for various reasons; **(2)** Defendant's wife said she was not the infringer and most of Malibu's subscribers are male; and **(3)** Defendant did not ask his neighbors if they used his router and failed to change his wireless password after instigation of litigation.  *See* Malibu Motion [DE 25] at 4-6.

The majority of Malibu's "evidence" is based on the expert testimony of Ernesto Rubi, who was disclosed to Defendant *on the last day of discovery*.  Accordingly, Defendant has moved to strike Mr. Rubi's declaration ("Improper Rubi Decl.") and Mr. Rubi's testimony generally.  Even with Malibu's fabricated expert declaration, it can point to no facts suggesting that Defendant Mark Fitzpatrick was the infringer.

1. <u>**Wireless Router Security and Range**</u>

Malibu contends that only Defendant and his wife could have used the wireless internet in his house because the wireless router was password protected and encrypted,[1] it was housed in a metal box inside a closet, and the thickness of the walls and the appliances in the kitchen preclude use by others.  *See* Malibu Motion [DE 25] at 4-6.  *None of these assertions proves infringement.*  First, as to access to the wireless router, a technician for a baby monitor service

---

[1] In arguing that Defendant's guest network was password protected, Plaintiff attempts to mislead the Court by stating that Defendant never changed the guest network password and as such alludes to the fact that a password existed.  *See* Malibu Motion [DE 25] at 5.  In making this unsubstantiated argument, Plaintiff cites to the testimony of Defendant's wife, Ms. Yvonne Chen.  Malibu Statement of Facts [DE 25-1] at ¶ 14.  However, Ms. Chen testified only that amongst the available wireless networks she could see when accessing the Internet was "lyness", Defendant's primary network, and another network called "lyness-guest", Defendant's guest network.  [SOF ¶ 4].  When asked if Ms. Chen had ever attempted to access the "lyness-guest" network, she answered "No".  [SOF ¶ 4].  Ms. Chen was never asked if she knew whether the guest network was password protected or whether she or Defendant had ever changed password if one did exist.  [SOF ¶ 4].  All she stated was that she had noticed the guest network but never accessed it.  [SOF ¶ 4]

stated expressly, and Defendant confirmed, that Defendant's network was broadcasting on a network that his "neighbor was using" and that the wireless router "was configured to provide a guest SSID that was openly allowing anyone to surf the net using [Defendant's] already limited bandwith."[2]  Defendant's Motion [DE 24] at 8. [3]

Malibu also cites to the Improper Rubi Decl. and the Linksys router manual for the proposition that Defendant's wireless router comes with an automatic password.  *See* Malibu Motion [DE 25] at 5.  Defendant does not dispute that a password is auto-generated.  However, Defendant has provided evidence that the guest network was accessed, whether it was open or for some other reason.  *See* Defendant's Motion [DE 24] at 8.  Both Defendant and Ms. Chen have experienced the effects of having other individuals accessing their network.  [SOF ¶ 2].  It could have been configured as open by the person that originally set up the router, intentionally or by mistake.  [SOF ¶ 3].  It could have been the result of someone trying to hack into Defendant's router.  [SOF ¶ 2].  Finally, it could have been the result of someone knowing the router's default password for the guest network.[4]  [SOF ¶ 2].  Whatever the reason, Defendant has provided evidence that that router was accessed by someone else in close proximity, and Plaintiff cannot rebut that claim.

Malibu also claims that "even if [the wireless router] had not been password protected, Defendant's Wi-Fi signal could not be used by third parties because it was placed in a metal box

---

[2] Counsel for Malibu inappropriately suggests that Defendant "perjur[ed] himself" for stating that the router does not have a password.  Malibu Statement of Facts [DE 25-1] at ¶ 13.  Defendant stated that the router does not have a password, which it does not; the wireless network created by the router contains a password.  [SOF ¶ 5].

[3] Defendant has also provided evidence that he was not at home during at least one of the downloads and that Hotwire did not identify Defendant as the subscriber associated with the Detected IP Address at the time of the infringements.  *See* Defendant's Motion at 8-11.

[4] Malibu claims that the default password is a random six digit alpha numeric password and cites the Imprp. Rubi Decl.  Improper Rubi Decl. Malibu Motion [DE 25] at 5.  However, the Linksys manual clearly states that the default password is "admin".  [SOF ¶ 2]

inside a clothes closet in his home and due to the thickness of the walls, and the appliances present in the unit, it would not be usable outside his unit." Malibu Motion [DE 25] at 5. Again, Malibu's contentions are based on the Improper Rubi Decl. Malibu Motion [DE 25] at 5. Notwithstanding, Mr. Rubi purports to opine on the distance covered by the wireless router – finding that the signal strength of the guest network can only go 10 to 15 feet. Malibu Statement of Facts; Ex. I [DE 25-10] at ¶ 30-33. This conclusion is belied by Malibu's own evidence. The first page of the Linksys E1550 manual raves about its expansive range stating that its "[h]igher quality antenna technology helps maintain high speeds across greater distances through your home." [SOF ¶ 7]. The E1550 online manual describes the coverage, stating:

> **Wireless coverage**
> Built with leading 802.11n wireless technology, the Linksys E1500 offers expanded range to create a powerful wireless network. MIMO antenna array boosts signal strength to provide reliable coverage so you can enjoy your wireless network from anywhere in your home.

[SOF ¶ 7]. Mr. Rubi's assertions are also called into question by Defendant and his wife's testimony that they can see multiple networks while in their home, meaning the "walls" and "appliances" did not preclude access. [SOF ¶ 6]. Moreover, during Ms. Chen's deposition, Malibu's counsel elicited that Ms. Chen has accessed the internet from distances more than 10-15 feet from the router from all of the rooms in her 1600 sq. foot apt including her guest bedroom, her own bedroom, her living room, her den, ***and her terrace***, and this is while the router was in the same metal box in a closet. [SOF ¶ 7]. Thus, Malibu's "expert" declaration does not comport with the facts of this case. *Mahone v. Holloway*, CV 311-101, 2013 WL 3928984 (S.D. Ga. 2013) (citing *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 256-57 91 L.Ed.2d 202 (1986) (stating that "discredited testimony" cannot be relied upon for purposes of summary judgment).

Finally, Mr. Rubi's ultimate conclusion is that due to the purported slow speed of the wireless router, Defendant's guest network would be "unattractive to potential internet users." Malibu Statement of Facts; Ex. I [DE 25-10] at ¶ 33.   Thus, Mr. Rubi in no way opines that Defendant's neighbors *did not access* his wireless network, just that the connection was slow. *See generally* Malibu Statement of Facts; Ex. I [DE 25-10].   Mr. Rubi could have in no way determined that the router was not accessed as he is not a fact witness and never had any ability to observe the actual router, set-up, or apartment at issue in this case.

**2.   Other Potential Infringers.**

Malibu also offers as evidence of Defendant's infringement the fact that his wife, Yvonne Chen, testified that she has not watched one of the Malibu's copyrighted works, she finds the title offensive, and it is not the type of movie that she would watch.[5]  Malibu Motion [DE 25] at 5.  Malibu also bases its conclusion on the fact that its subscribers are largely male.  Malibu Motion [DE 25] at 5.  However, ***BOTH*** Defendant and Ms. Chen testified that they had never watched nor downloaded any of the subject works.  [SOF ¶ 9].  Indeed, both Defendant and Ms. Chen testified that they had never even heard of the BitTorrent Protocol which was allegedly used to download the subject works.  [SOF ¶ 9].  Malibu's pick-and-choose approach as to believing the testimony of Ms. Chen and not Defendant is improper and clearly demonstrates that Malibu is not entitled to summary judgment on its copyright infringement claim.  *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1986) (stating that "[i]ssues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution

---

[5] Malibu continues its efforts to embarrass Defendant and his wife by associating them with obscene film names in its motion, as it did in Ms. Chen's deposition.  *See* Malibu Motion [DE 25] at 5; [SOF ¶ 9].  Defendant's counsel shall refer to Malibu's movies as the copyrighted works so has not to perpetuate Malibu's improper practices.

by the trier of fact.").  Furthermore, stating that the Defendant infringed because the majority of Plaintiff's subscribers are male is hardly compelling evidence of Defendant's guilt.

### 3.   Defendant's Purported Failure to Question Neighbors

Finally, Malibu argues that the fact that neither Defendant nor his wife ever asked their neighbors if they had accessed their internet and that they never changed their password is evidence that Defendant committed infringement.   Malibu Motion [DE 25] at 5-6.   This argument is simply nonsensical.   There is no relation to Defendant and his wife not questioning their neighbors to Defendant's having committed infringement months earlier.  *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1160 (S.D. Fla. 2006) *aff'd*, 527 F.3d 1218 (11th Cir. 2008) (holding that copyright holder has the burden of proof to show infringement). Additionally, as discussed in Defendant's Motion, it was not until a technician informed Defendant that he realized his guest network was publicly available.   Defendant's Motion [DE 24] at 8.   Before then Defendant had no reason to suspect this issue or to knock on neighbors' doors in order to inquire as to whether anyone was accessing his network.

## II.   Malibu's Argument Regarding the Failure to Turn Over Evidence is Simply Wrong

Malibu argues that Defendant's failure to turn over the hard drives on both his personal and work computers and his router somehow warrants a negative inference.  Malibu Motion [DE 25] at 6-10.  This argument is both factually and legally false.  On ***April 23, 2013***, Plaintiff submitted the following request ("Request") to Defendant:

(1) To permit Plaintiff to enter onto the following land to inspect, photograph, test, or sample the property or an object or operation on the property pursuant to Fed. R. Civ. P. 34(a)(2):
   (a) Plaintiff will enter onto the premises of **200 Biscayne Way Blvd., Unit 3107, Miami, Florida 33131**, for the purpose of: (1) making forensic copies of each of Defendant's computers' hard drives; (2) connecting to the internet to ascertain Defendant's IP address; and (3) inspecting Defendant's modem, new wireless router, and old wireless router.
   (b) Such entry will be made on **May 28, 2013** at **10:00 am**.

[SOF ¶ 10].  Determining that the Request to enter Defendant's home and make copies of all of his hard drives was excessive and risked access to privileged and confidential information, Defendant offered to provide Malibu the requested information by implementing some security controls and decreasing the burden stating on ***May 22, 2013***:[6]

> FITZPATRICK is amen[]able to a limited investigation of the described modems, routers, and computer, conducted by an independent third party, at Plaintiff's expense, pursuant to a proper confidentiality designation and conducted under a supervised framework in which defense counsel is present.

[SOF ¶ 11].

Malibu, however, ***took absolutely no further action*** in response to its Request. [SOF ¶ 12].  It did not attempt to negotiate the terms of the review framework, it did not seek to confer on a motion to compel, and it did not in any way seek court intervention. [SOF ¶ 12].  It was not until over a month later on ***July 8, 2013***, <u>one week before the close of discovery</u>, that Plaintiff's counsel sent correspondence regarding the issue.  [SOF ¶ 12]. In that response, Malibu ignored Defendant's good faith proposal of limiting the investigation and protecting privileged and confidential material through a third party. [SOF ¶ 12].   Rather, Plaintiff's counsel simply stated that Defendant's objections and conditions were unreasonable.  [SOF ¶ 12].  Malibu's counsel also stated that "examining a hard drive takes weeks".  [SOF ¶ 12].  However, as mentioned, this correspondence was

---

[6] The notion that Malibu would be permitted to make "forensic copies of each of Defendant's computers' hard drives," is not a workable request.  The normal practice for reviewing this type of information is to create search terms that are used to search for material on a hard drive.  *Rates Tech., Inc. v. Elcotel, Inc.*, 118 F.R.D. 133, 135 (M.D. Fla. 1987) (holding that a party's suggestion that a request for an entire computer program be limited to specific portions due to irrelevant and sensitive information "extremely reasonable" and denying the motion to compel).  Thus, Malibu's request was clearly improper.  Fed. R. Civ. P. 1 (stating that the Federal Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding".)

sent by Plaintiff's counsel on July 8, 2013, *a week before the July 15, 2013 discovery cutoff date*.  [SOF ¶ 12].

If Malibu in good faith truly believed that its broad request for Defendant's hard drives was appropriate and that Defendant's conditions to production were somehow unjustified, then Plaintiff should have conducted a good faith conferral and then filed a an appropriate motion to compel seeking guidance from the Court pursuant to Fed. R. Civ. P. 37.   *Smith v. Atlanta Postal Credit Union*, 350 Fed. Appx. 347, 350 (11th Cir. 2009) (upholding dismissal with prejudice based on party's failure to engage in a good faith conferral with opposing counsel).  Malibu did no such thing.  Accordingly, Malibu should be precluded from seeking any relief from its own failure to adhere to the Federal Rules of Civil Procedure.

The numerous cases Malibu cites provide no support for an "adverse inference."   Each case Malibu cites involved a party that either ignored or evaded *an order issued by a court*. *Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 at *8 (E.D. Pa. June 18, 2013)(Defendant Bryan White was punished for *wiping clean* his computer in an attempt to cover up damaging evidence); *Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986)(holding that district court was justified in denying government's motion to dismiss petition to quash summons where government failed to file missing exhibits despite *two court orders*.); *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. N. L. R. B.*, 459 F.2d 1329, 1333-34 (D.C. Cir. 1972) (holding that adverse inference was appropriate after defendant failed to produce documents pursuant to plaintiff's subpoena after its motion to revoke the subpoena was denied by the court); *In re Bailey, 451 B.R. 640, 642* (Bankr. S.D. Ga. 2011)( Plaintiff filed a motion to compel discovery and the court entered an order compeling production by defendant.  However, defendant failed to appear at trial and failed to produce any of the

requested documents.); *N.L.R.B. v. Int'l Medication Sys., Ltd.*, 640 F.2d 1110, 1116 (9th Cir. 1981) (finding that the National Labor Relations Board did not have authority to impose discovery sanctions and instead remanded the case so that the Board could have an opportunity to enforce its subpoenas via the lower court); *Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectos, S.A.*, 728 F.2d 572, 574 (1st Cir. 1984) (After defendant failed to answer the interrogatories, it was ordered to do so by the court. Defendant, however, complied by filing answers in Spanish which did not answer the questions asked and provided virtually no relevant information); *Robinson v. Union Cent. Life Ins. Co.*, 144 F. 1005, 1010 (C.C.N.D. Ga. 1906) (holding that adverse inference is insufficient by itself to allow summary judgment to be entered against a party and that the party seeking summary judgment must also establish independently the elements of the claim); *S.E.C. v. Scherm*, 854 F. Supp. 900, 904 (N.D. Ga. 1993) (holding that the lower court was proper in instructing the jury that it could draw inferences where counter evidence was lacking).  As stated, Defendant offered to produce the documents pursuant to a framework that protected both the attorney client privilege and confidentiality of the numerous items contained on Defendant's personal computers.  Malibu never sought to negotiate the terms of the framework, made attempts to confer, or filed a motion to compel with the Court.  And Malibu clearly did not obtain any order from the Court which Defendant "ignored or evaded."  Thus, Malibu's efforts to obtain an "adverse inference" in lieu of providing any evidence of infringement should be rejected.

III.   **Malibu's Motion for Judgment on Defendant's Affirmative Defenses are Premature**

        Malibu expends ten (10) pages seeking summary judgment on Defendant's Affirmative Defenses, specifically numbers 3-15.  *See* Malibu Motion at 11-20.  As a preliminary matter, the Court need only address Malibu's arguments if it finds that Defendant is entitled to judgment on

its summary judgment motion.  Furthermore, in ruling on a motion for summary judgment the court must determine that there is no genuine issue as to a material fact in order for one party or another to prevail as a matter of law.  Fed. R. Civ. P. 56.  In order to establish that no genuine issue exists, the moving party must provide the necessary evidence and proof in support of their claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial").  Plaintiff has failed to cite to any supporting evidence in arguing for summary judgment on the majority of Defendant's affirmative defenses.

1.  **Summary Judgment should not be Granted as to Defendant's Third Affirmative Defense (De Minimis Non Curat Lex)**

Plaintiff argues that summary judgment should be granted as to Defendant's substantiality defense of de minimis non curat lex.  Whether the substantiality threshold has been met is an issue of fact that must be resolved at trial.  *Abrams v. Ciba Specialty Chemicals Corp.*, 663 F. Supp. 2d 1243, 1254-55 (S.D. Ala. 2009) (holding that it was not prepared to rule as a matter of law whether or not plaintiff's claim was sufficiently substantial in light of the de minimis non curat lex principle and ruled that it was a matter for the jury to decide).  Thus, this defense is not properly disposed of on summary judgment.

2.  **Summary Judgment should not be Granted as to Defendant's Fourth Affirmative Defense (Failure to Mitigate Damages)**

Malibu states that summary judgment should be granted as to Defendant's mitigation defense arguing that Malibu elected to recover statutory damages instead of actual damages.  However, in both Malibu's Complaint and the Amended Complaint, Malibu alleges that it suffered actual damages and is entitled to these damages.  *See, generally*, Malibu Complaint [DE1 ] & Malibu Amended Complaint [DE 5].  Thus, summary judgment on this defense is not

appropriate.  Malibu has alluded to the fact during discovery that it may not be seeking actual

damages.  In the event that it withdraws this relief, Defendant will withdraw this affirmative

defense.

3. **Summary Judgment should not be Granted as to Defendant's Fifth Affirmative Defense (Innocent Infringement)**

Malibu argues that summary judgment should be granted as to Defendant's innocent

infringer defense.  However, an analysis of this defense is not appropriate at this time and only

becomes relevant if proceedings advance and an evidentiary hearing is held as to available

remedies.  *Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1252, 1263 modified, 206 F. Supp. 2d

1270 (S.D. Fla. 2002) (holding that the innocent infringer defense does not affect the issue of

liability for infringement and that an analysis of defendant's good faith or innocence is only

relevant as to available remedies).  Defendant has continuously denied having knowingly

infringed Malibu's protected works.  [SOF ¶ 9].  Therefore, an innocent infringer defense is

warranted.

4. **Summary Judgment should not be Granted as to Defendant's Sixth Affirmative Defense (Barring of Statutory Damages & Attorneys' Fees) and Tenth Affirmative Defense (Injunctive Relief)**

Malibu argues that summary judgment should be granted in its favor as to Defendant's

defense that statutory damages and attorneys' fees for Malibu should be barred and that Malibu

is not entitled to injunctive relief.   The awarding of statutory damages and attorneys' fees is

discretionary upon the court and not mandated as a matter of law.  *Major Bob Music v. Stubbs*,

851 F. Supp. 475, 482 (S.D. Ga. 1994) (holding that the court in its discretion may or may not

choose to award costs and attorney fees to the prevailing party); *Broad. Music, Inc. v. Entm't

Complex, Inc.*, 198 F. Supp. 2d 1291, 1294 (N.D. Ala. 2002) (noting that the applicability of

statutory damages in an infringement action is to be determined based upon what the court

considers just and appropriate). Similarly, the decision whether to grant or deny injunctive relief rests is also discretionary. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008). Consequently, a decision as to whether Malibu should or should not receive statutory damages, attorneys' fees or injunctive relief is not appropriate at this stage in the proceedings and should not be decided on summary judgment.

5. __Summary Judgment should not be Granted as to Defendant's Seventh Affirmative Defense (Failure to Join an Indispensable Party)__

Malibu argues that summary judgment should be granted as to Defendant's defense of failure to join an indispensably party in this action. An indispensable party is one whose interest in the controversy makes it impossible to completely adjudicate the matter without affecting either that party's interest or the interests of another party in the action. *Hertz Corp. v. Piccolo*, 453 So.2d 12, 14 n. 3 (Fla.1984) (describing indispensable parties as ones so essential to a suit that no final decision can be rendered without their joinder); *Bastida v. Batchelor*, 418 So.2d 297, 299 (Fla. 3d DCA 1982) ("An indispensable party [is] one without whom the rights of others cannot be determined."). As a result, when an indispensable party to an infringement claim is not joined there exists the risk of multiple adjudications and creates real doubt that this court's judgment will accord the parties the relief to which they are ultimately entitled. *Gould v. Control Laser Corp.*, 462 F. Supp. 685, 687 (M.D. Fla. 1978) aff'd in part, appeal dismissed in part, 650 F.2d 617 (5th Cir. 1981) (finding that there was a failure to join a certain individual that was "indispensable" and as a result there could be no assurance that any final judgment rendered would be of any real legal consequence). Here, Defendant argues that he is not the infringer but rather that someone else infringed on Malibu's copyrighted works, if indeed anyone did. Additionally, the BitTorrent protocol requires a downloader to engage with multiple persons. Thus, it is possible that those downloaders are indispensable parties as well.

6. **Summary Judgment should not be Granted as to Defendant's Eighth Affirmative Defense (License, Consent, and Acquiescence), Ninth Affirmative Defense (Unclean Hands), Thirteenth Affirmative Defense (Estoppel), Fourteenth Affirmative Defense (Waiver) and Fifteenth Affirmative Defense (Forfeiture or Abandonment)**

`        Malibu argues that summary judgment should be granted as to Defendant's Eighth, Ninth, Thirteenth, Fourteenth, Fifteenth Affirmative Defenses.  It is Defendant's contention that Malibu seeded the BitTorrent protocol in an effort to encourage infringing and then pursue settlements from the entrapped infringers.  [SOF ¶ 13].  Thus, there exists a question of fact regarding a Defendant's actions which must be decided by a jury.  *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1238 (11th Cir. 2010) (reversing the district court's grant of summary judgment in favor of defendant because of the existence of genuine issues of material fact as to the scope of defendant's implied license).

7. **Summary Judgment should not be Granted as to Defendant's Eleventh Affirmative Defense (Lack of Originality)**

    Malibu argues that summary judgment should be granted in their favor as to Defendant's defense that Malibu's works lack originality.  After months of investigation, Defendant will withdraw this defense.

8. **Summary Judgment should not be Granted as to Defendant's Twelfth Affirmative Defense (Invalidity or Unenforceability of Copyright)**

    Lastly, Malibu moves for summary judgment on Defendant's defense as to the invalidity and/or unenforcability of Malibu's copyright.  As Defendant will argue at trial, Malibu may not be entitled to copyright protection at all due to the obscene nature its works.  Many courts have recognized that, if a work is considered obscene, it may not be eligible for copyright protection.  *See Liberty Media Holdings, LLC v. Swarm Sharing Hash File and Does 1–38*, 821 F.Supp.2d 444, 447 n. 2 (D.Mass.2011) (noting it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement"); *Devils Films, Inc. v. Nectar Video*,

29 F.Supp.2d 174, 177 (S.D.N.Y.1998) ("[o]nce a court has determined that copyrighted material is obscene, there seems no reason to require it to expend its resources on behalf of a Malibu who it could as readily be trying for a violation of the federal criminal law"); *Next Phase Distribution, Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (recognizing that joining 27 defendants, a substantial number of whom may have no liability in this case, in a copyright infringement case when the copyright itself might be deemed invalid, could prove to be a costly and futile exercise for the court, and a damaging an unnecessary ordeal for the John Does).  As such, a genuine issue of material fact exists as to whether Malibu's works are protected and thus, summary judgment is premature at this juncture.

**CONCLUSION**

For the reasons set forth, Malibu's summary judgment motion should be denied.

Respectfully Submitted:

By:     /s/ Kubs Lalchandani
        LALCHANDANI SIMON PL
        Kubs Lalchandani
        Florida Bar No.: 63966
        Daniel Simon
        Florida Bar No.: 0016244
        *Attorneys for Defendant*
        25 SE 2nd Avenue, Suite 1020
        Miami, Florida 33132
        Tel:     (305) 999-5291
        Fax:     (305) 671-9282

**CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing motion has been

furnished via CM/ECF this 8th day of August, 2013 to attorney for Malibu:

M. Keith Lipscomb
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd., Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Malibu*

By: /s/ Kubs Lalchandani
      Kubs Lalchandani, Esq.

16