UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MALIBU MEDIA, LLC,                         )
                                           )
    Plaintiff,                             )   Civil Case No. <u>1:12-cv-22767-PAS</u>
                                           )
v.                                         )
                                           )
MARK FITZPATRICK,                          )
                                           )
    Defendant.                             )
_____)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 4 |
| II. | LEGAL STANDARD | 4 |
| III. | ARGUMENT | 5 |
| | A. The Correlation Performed by Hotwire Was Accurate | 5 |
| | B. No Reasonable Juror Could Conclude That the Subject IP Address Was Not Assigned to Defendant At All Relevant Times | 6 |
| | C. Defendant Consciously Decided Not to Disclose His Computers' Hard Drives, Provide Plaintiff With Copies of His Hard Drives, or Introduce His Hard Drives Into Evidence at Trial | 8 |
| | D. It is Undisputed That Both Networks on Defendant's Wi-Fi Router Were Password Protected At All Relevant Times | 10 |
| | E. BitTorrent Clients Continue to Distribute Pieces of Data So Long as the Computer is On | 13 |
| | F. All of the Evidence Indicates That Defendant, Not a Third Party Outside of His Residence, Committed the Infringement | 14 |
| | G. Defendant Has No Admissible Evidence to Suggest That a Third Party Outside of His Residence Committed the Infringement | 15 |
| | H. A Jury Would Not Be Permitted to Find That a Third Party Outside of Defendant's Residence Committed the Infringement | 16 |
| IV. | CONCLUSION | 17 |

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)......................................................................4

*Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1268 (N.D. Ala. 2011)...................15

*Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986)..........................................................9

*Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) .............................16

*In re Bailey*, 451 B.R. 640, 645 (Bankr. S.D. Ga. 2011) ..............................................................9

*International Union (UAW) v. NLRB,* 459 F.2d 1329, 1336 (D.C. Cir.1972)...............................9

*International Union (UAW)*, 459 F.2d at 1338 (emphasis added)..................................................9

*Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012)............................................4

*Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectos, S.A.*, 728 F.2d 572, 575 (1st Cir. 1984)...............................................................................................................................9

*KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1265, 1274 (M.D. Ala. 2001) .............................15

*Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999).........................................................10

*Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at *3 (N.D. Ill. 2013).................................14

*Marshall v. City of Cape Coral,* 797 F.2d 1555, 1559 (11th Cir. 1986)........................................5

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) .....................4

*McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) .........................................................11

*N.L.R.B. v. Int'l Medication Sys., Ltd.*, 640 F.2d 1110, 1115 (9th Cir. 1981)...............................9

*Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 168 *report and recommendation adopted,* 286 F.R.D. 319 (E.D. Mich. 2012) ......................................................................14

*Patrick Collins, Inc. v. John Does 1-28*, 2013 WL 359759, at *3 (E.D. Mich. 2013).................14

*Robinson v. Union Cent. Life Ins. Co.*, 144 F. 1005, 1010 (C.C.N.D. Ga. 1906) .........................9

*S.E.C. v. Scherm*, 854 F. Supp. 900, 905 (N.D. Ga. 1993)..........................................................10

*Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) ...............................................15

*Woods v. Paradis*, 380 F. Supp. 2d 1316, 1330 (S.D. Fla. 2005)................................................16

I. **INTRODUCTION**

Defendant's Motion for Summary Judgment should be denied. Defendant's arguments are based on a mere denial and impermissible speculation. Conversely, Plaintiff presented so much evidence in its Motion for Summary Judgment (CM/ECF 25) that proves Defendant is liable that no reasonable juror could find otherwise. Specifically, Defendant's Internet Service Provider ("ISP") identified Defendant as the subscriber of the IP address used to infringe, and the statistics set forth below prove that Defendant had that IP address at all relevant times. Defendant's wireless router was secure, and Defendant unreasonably refused to allow Plaintiff to inspect his computers and will not be introducing them at trial. Consequently, the jury may draw an adverse inference against Defendant. Plaintiff, therefore, respectfully requests that the Court deny Defendant's Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment.

II. **LEGAL STANDARD**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are

no genuine disputes of material fact that should be decided at trial. *Marshall v. City of Cape Coral,* 797 F.2d 1555, 1559 (11th Cir. 1986).

**III.    ARGUMENT**

    **A.    The Correlation Performed by Hotwire Was Accurate**

Exhibit "B" to Plaintiff's Amended Complaint "sets forth all of the hit dates (in undersigned's possession when th[e] Complaint was drafted) associated with all of Defendant's infringing distributions of pieces of computer files containing copies of the movies covered by the Copyrights-in-Suit." Amended Complaint ("Compl."), at ¶ 22. Each of the hit dates is an infringing transaction. Plaintiff's subpoena to Defendant's Internet Service Provider ("ISP") requested the identity of the individual who correlated to the subject IP address on one of those dates. Defendant's argument that "Hotwire did not identify Defendant as the subscriber corresponding to the detected IP address," is blatantly false. Defendant's Motion, at p. 9. Defendant's ISP, Hotwire Communications, Ltd. ("Hotwire"), confirmed that its subscriber and account holder, Mark Fitzpatrick, who resides at 200 Biscayne Boulevard Way, Unit 3107, Miami, Florida 33131 was assigned the IP address 67.205.241.239 on February 9, 2012:

    **Q:**    . . . this is the response to -- Hotwire's response to the subpoena that we previously marked as Exhibit B; correct?

    **A:**    That's correct.

    \*\*\*

    **Q:**    And for No. 35, for IP address 607.205.241.239, who is the subscriber that Hotwire identified in response to this subpoena?

    **A:**    Mark Fitzpatrick.

*See* CM/ECF 25-1, at ¶ 6; CM/ECF 25-5, at p. 12:9-21.

It is undisputed that Hotwire correctly correlated the IP address on Plaintiff's subpoena to Defendant Mark Fitzpatrick. As explained below, it was not necessary for Hotwire to correlate the IP address to each and every infringing transaction.

### B. No Reasonable Juror Could Conclude That the Subject IP Address Was Not Assigned to Defendant At All Relevant Times

Defendant's argument that Hotwire did not identify him at all relevant times as the subscriber fails. Indeed, no reasonable juror could conclude that Defendant's IP Address was assigned to another Hotwire subscriber at any time when infringement was occurring because the mathematical probabilities quantify how exceedingly remote the chances are that the Defendant's IP Address would be assigned to another infringer of Plaintiff's copyrights.

To explain, as Defendant pointed out, Hotwire uses dynamic IP Addresses. In other words, Hotwire's computer program allows—but does not require—Hotwire to assign a subscriber a different IP Address if the subscriber has not used his or her internet for at least 24 consecutive hours. *See* Deposition of Laurie M. Murphy ("Hotwire Depo."), CM/ECF 25-5, at p. 31:4-25; p. 32:1-10. Plaintiff provided a complete list of Defendant's infringements as recorded by IPP, Ltd. *See* Declaration of Tobias Fieser ("Fieser Decl."), CM/ECF 25-3, at Exhibit 1. As stated *supra* at p. 3, Hotwire accurately correlated Defendant to the February 9, 2012 infringement that occurred at 2:44 UTC. Exhibit 1 also shows Defendant infringed Plaintiff's copyrights on 11 different days between and including January 3, 2012 and February 12, 2012. During the full calendar year between July 1, 2012 and July 1, 2013, there were only 50 unique IP addresses that trace to Hotwire that infringed one or more of Plaintiff's works. *See* Fieser Decl., CM/ECF 25-3, at ¶ 27 and Exhibit 2. Hotwire has 65,000 subscribers in Florida. *See* Pl. Stat. Undisp. Mat. Facts, CM/ECF 25-1, at ¶ 7 and Exhibit E. We do not know how many IP Addresses Hotwire has allocated to its 65,000 Florida subscribers. However, we do know that

6

Hotwire must have a sufficient number of IP Addresses for each of its Florida subscribers who are simultaneously using the Internet. Even if we were to assume that at peak times only 1 in 10 of Hotwire's subscribers were simultaneously using the Internet, that would mean that Hotwire has 6,500 IP Addresses to distribute among its 65,000 Florida subscribers. Since there were only 50 unique IP addresses that infringed, and Hotwire has at least 6,500 IP Addresses, the odds that the same IP address was used by two different infringers is: 50 divided by 6,500 = 0.00769). In other words, 7 out of 1,000.

      The odds are actually significantly less than 7 out of 1,000 because 50 unique IP Addresses represents an entire year of Hotwire Florida infringers – not the number of infringers between January 3, 2012 and February 12, 2012 (which if it was consistent with that same period of time in 2013 would have only been 11).[1] Further, Hotwire almost certainly has a much higher ratio of IP Addresses to subscribers than 1 in 10. Additionally, each of Plaintiff's movies is seeded at least 10 times. Put another way, at least 10 different .torrent files are created for each of Plaintiff's movies. *See* Fieser Decl., CM/ECF 25-3, at ¶ 28 and Exhibit 3. Each copy that is associated with a .torrent file has a unique cryptographic hash value. Infringers can choose to participate in the swarm for each of those unique copies. It is analogous to a Walgreens that sells Excedrin. A person can buy the Excedrin from many stores. If IP Addresses were being swapped between infringers, then one would expect to see the same IP Address downloading different copies of the same movie. To continue the Walgreens analogy, if numerous thieves had copies of stolen credit cards in an area with 10 Walgreens, you would expect some of the thieves to shop at different Walgreens than the owners of the credit cards. Significantly, that phenomenon has never happened. Instead, IPP, Ltd.'s records demonstrate that all of the IP

---

[1] The early 2012 statistics are not available because IPP, Ltd., deleted infringement data prior to July 1, 2012, for those people who were not in active litigation.

Addresses used by Hotwire's subscribers nationally always download the exact same copy of a movie, as evidenced by that copy's unique cryptographic hash value. Such is the case here. *See* Fieser Decl., CM/ECF 25-3, at Exhibit 1.

Moreover, regarding Defendant, one of the infringements, "Teenagers in Love – Tiffany," occurred between and including January 3, 2012 and February 9, 2012 with the same exact hash value. And, another one of the infringements for "Sex with a Supermodel – Tiffany," occurred between January 13, 2012 and February 11, 2012 with the exact same hash value. Therefore, the evidence demonstrates continuous infringement of the same exact copies of the movies during the entire period of infringement. It is inconceivable for this to occur unless one unique person is using the subject IP Address.

Based upon the foregoing, Plaintiff respectfully suggests that there is not a genuine issue of material fact about whether Defendant was assigned the subject IP Address at all relevant times. Indeed, there is close to a zero percent chance that he was not so assigned the subject IP Address, and no reasonable jury could find in his favor on this issue.

### C. Defendant Consciously Decided Not to Disclose His Computers' Hard Drives, Provide Plaintiff With Copies of His Hard Drives, or Introduce His Hard Drives Into Evidence at Trial

Plaintiff was unable to examine Defendants' wireless router and computers because Defendant thwarted Plaintiff's attempts to do so. As explained in Plaintiff's Motion for Summary Judgment, Defendant twice objected to Plaintiff's efforts to examine Defendant's computers on frivolous grounds. And, when Plaintiff attempted to offer a reasonable solution to Defendant's objections, no response was received. Pl. Stat. Undisp. Mat. Facts, Exhibit "O."

Since Defendant consciously chose not to introduce relevant evidence at trial that could exculpate him, an adverse inference is proper. To explain, "[t]he 'adverse inference' rule

8

provides that 'when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him.'" *Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986) (adverse inference warranted where IRS failed to support claim by filing exhibits despite two court orders) quoting *International Union (UAW) v. NLRB,* 459 F.2d 1329, 1336 (D.C. Cir.1972) (overturning Board's refusal to draw an adverse inference from suppression of records). *See also In re Bailey*, 451 B.R. 640, 645 (Bankr. S.D. Ga. 2011) ("This Court draws an adverse inference from Defendants' concealment and assumes that truthful answers to those questions and production of documents would have been unfavorable to Defendants."); *N.L.R.B. v. Int'l Medication Sys., Ltd.*, 640 F.2d 1110, 1115 (9th Cir. 1981) (party's failure to produce relevant evidence even without discovery requests merits adverse inference); *Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectos, S.A.*, 728 F.2d 572, 575 (1st Cir. 1984) ("The district court was entitled, as are we, to draw an adverse inference against the defendant for its failure to produce[.]"); *Robinson v. Union Cent. Life Ins. Co.*, 144 F. 1005, 1010 (C.C.N.D. Ga. 1906) ("The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its tenor is unfavorable to the party's cause."). The court further held that the rule is applicable even in the absence of a subpoena compelling production:

> First, it is important to realize that <u>the applicability of the rule in no way depends on the existence of a subpoena compelling production</u> of the evidence in question. The theory behind the rule is that, all other things being equal, a party will of his own volition introduce the strongest evidence available to prove his case. <u>If evidence within the party's control would in fact strengthen his case, he can be expected to introduce it even if it is not subpoenaed</u>.

*International Union (UAW)*, 459 F.2d at 1338 (emphasis added).

Considering the evidence submitted by Plaintiff in addition to the adverse inference drawn from Defendant's refusal to produce materially relevant evidence, no reasonable juror

9

could find that Defendant did not commit the infringement alleged. *See e.g. S.E.C. v. Scherm*, 854 F. Supp. 900, 905 (N.D. Ga. 1993) (granting plaintiff's motion for summary judgment where adverse inference combined with a sworn statement, sworn affidavit, and other evidence had been presented.) Accordingly, Plaintiff is entitled to summary judgment.

    **D.** **It is Undisputed That Both Networks on Defendant's Wi-Fi Router Were Password Protected At All Relevant Times**

There is no admissible evidence that "Defendant's wireless router was open to anyone in proximity." Defendant's Motion, at p. 8. To the contrary, the undisputed facts establish that both of the wireless networks were password protected and encrypted at all relevant times. In support of his argument, Defendant relies upon an e-mail from the WiFi Baby technician who told Defendant that his "wireless router was broadcasting on a channel that [his] neighbor was using" and that it was "configured to provide a guest SSID that was openly allowing anyone to surf the net using [his] already limited bandwidth." Defendant's Motion, at p. 8.

The technician's statements, however, constitute inadmissible hearsay which is not properly considered on a motion for summary judgment. This is particularly true since Plaintiff attempted to depose this technician, Errol M. Hunter, and he no longer works for WifiBaby and cannot be found. Had Plaintiff been able to depose Mr. Hunter, Plaintiff would have established that he was only able to see an open guest network, and that he <u>assumed</u> it could be used without a password. This assumption is demonstrably false as evidenced by the router's manual and the third party test described *infra*.

Regarding hearsay, "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Under Federal Rule of Evidence 801(c), "[h]earsay means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove

10

the truth of the matter asserted in the statement." *Id.* "Unsworn statements . . . should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008).

The technician's statements clearly constitute hearsay and should therefore be disregarded. Defendant offers the technician's unsworn statement to prove the truth of the matter asserted – that the wireless router was unsecure. Defendant has not established that the statement is otherwise admissible as non-hearsay or an exception to the hearsay rule and the technician's e-mail should therefore be ignored.

To the extent that Defendant claims to have "confirmed that the router had the guest access function available and it was open," this bald statement provides no detail as to what steps were taken to confirm that the WiFi technician's statements were correct. And, it is undisputed that the guest network only *appears* to be an open network. The observation that the guest network appears open is correct, although the resulting inference drawn by the technician – that the network "allow[ed] anyone to surf the net using [Defendant's] already limited bandwidth" – does not follow. To explain, anyone with a Wi-Fi capable device within range of Defendant's router may connect to the router only. In this way, it appears that the guest network is open to anyone. However, in order to actually connect to the internet using the guest network a password *must* be entered. The router does not allow the guest network to provide internet access without a password; it must be password protected.

Independent testing of a Cisco Linksys E1550 wireless router confirmed that access to the Internet through both the guest and main networks mandates entry of the correct password before a user may connect. *See* CM/ECF 25-10, at ¶ 13. "[T]he router, as part of its standard setup process, auto-generated two SSID network identifiers. The first . . . [is] the 'main network'

11

identifier and the second . . . the 'guest network' identifier." *Id.*, at ¶ 17. "The router additionally auto-generated two passwords, one for the main network and one for the guest network. The main network's password is at least 8 alphanumeric characters in length, but the router's auto-generated password during setup was 12 alphanumeric characters long. The guest network's password is at least 4 alphanumeric characters long, but the router's auto-generated password during setup was 6 alphanumeric characters long." *Id.*, at ¶ 18. "It is not possible to configure the main network without a password. It is also not possible to configure the guest network without a password." *Id.*, at ¶ 19. "When using the guest network, the router allows users of wireless devices to authenticate (or connect) to the wireless access point; however access to the Internet or internal data network is restricted." *Id.*, at ¶ 22. "Although a user may connect to the guest network without a password, transmission of data to other computers on the local area network (local to the router) or to computers on the wide area network (the Internet) is disallowed." *Id.*, at ¶ 23. "Wireless users of the guest network are only granted access to local and wide area network resources once they launch a web browser and are redirected to a web (landing) page, which will prompt them for the guest password. Once the guess [*sic*] password is entered, the router allows the guest user access to the local and wide area network resources." *Id.*, at ¶ 24. "This is confirmed by the router's instructions regarding guest access, which state: 'Your guests should connect to your wireless network listed above (the guest network) by opening a web browser and entering the guest password." *Id.*, at ¶ 25.

The above facts are indisputable and Defendant, through his own independent verification, could have confirmed this. Defendant failed to do so, however, even after being informed of this information by Plaintiff and instead opted to pursue his argument with no factual support. Having conducted no prior investigation into his position, Defendant has likely

violated Fed. R. Civ. P. 11(b). Accordingly, Plaintiff has already served Defendant with a Rule 11 Motion for Sanctions for failing to conduct a reasonable investigation into the facts before maintaining his argument and refusing in bad-faith to conduct the necessary investigation.

Ultimately, there cannot be a genuine issue of material fact regarding the router's functionality. It is analogous to the sum of two plus two equaling four. If a person states that two plus two equals five, it is not evidence of an issue of fact but instead a delusion. The functionality of Defendant's router is ascertainable and testable. And, this Court should not let competing theories be brought before a jury. Instead, if Defendant does not withdraw his argument, the Court should hold an evidentiary hearing in connection with this Motion and/or the Rule 11 Motion.

### E. BitTorrent Clients Continue to Distribute Pieces of Data So Long as the Computer is On

Defendant also makes the erroneous argument that he could not be the infringer because during one of the infringements, "the record evidence is undisputed that Defendant was at work at his place of business." Defendant's Motion, at p. 8. This argument fails because it is a well-known fact that the software which enables the BitTorrent protocol to work (aka a "BitTorrent client") continues to distribute data so long as the computer is on and the user did not instruct the client to stop distributing data. The operation of the BitTorrent protocol is not dependent upon an individual's presence at the computer. "The nature of the BitTorrent protocol provides for continuous seeding and distributing of a file long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged infringer will seed and distribute a movie for an extended period of time." *See* CM/ECF 25-3, at ¶ 18. Defendant proffered no evidence that he disabled automatic seeding or disconnected from the swarm. *See also e.g. Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 168 *report and*

13

*recommendation adopted,* 286 F.R.D. 319 (E.D. Mich. 2012) ("the default setting is that each user automatically uploads each piece to other peers at all times until the user affirmatively chooses to disable uploading, exits the program or deletes the Torrent.  The fact that Plaintiff's investigator was able to download a piece from each Defendant means that they did not inhibit uploading."); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618, at *3 (N.D. Ill. 2013) ("Th[e] file becomes an additional seed . . . and remains available to other peers as long as the user that is in possession of the file remains connected to the swarm through the Client Program."); *Patrick Collins, Inc. v. John Does 1-28*, 2013 WL 359759, at *3 (E.D. Mich. 2013) (quoting from BitTorrent.org for the proposition that until one exits the program, a file will keep uploading.).

Far more telling is that Defendant was home during each of the infringements that occurred over a six week period of time on Exhibit "B."  Here, Defendant did not disable the automatic sharing feature the one time that IPP, Limited detected the infringement when he was not at home.

> **F.     All of the Evidence Indicates That Defendant, Not a Third Party Outside of His Residence, Committed the Infringement**

As discussed *supra*, Defendant's Cisco Linksys E1550 wireless router was password protected and the signal that it emits was encrypted.  Further, Defendant's modem and router are kept inside a metal box in a clothes closet in his unit.  *See* CM/ECF 25-1, at ¶ 16.  The interior walls for Defendant's unit are three inches thick, and are made of insulated drywall; the exterior walls are ten inches thick, and are made of concrete.  *Id.*, at ¶ 17.  And, Defendant has a microwave in his kitchen.  *Id.*, at ¶ 18.  Thus, even as to Defendant's closest neighbors, the wireless internet signal is severely degraded.  *See* CM/ECF 25-10, at ¶¶ 26-32.  "The signal strength and noise ratio is consistent with an unstable Internet connection, high packet loss and

the inability to sustain long periods of upload or download activity, making the connection to the router's guest network unattractive to potential internet users." *Id.*, at ¶ 33.

>   G. **Defendant Has No Admissible Evidence to Suggest That a Third Party Outside of His Residence Committed the Infringement**

Defendant's assertion that "it is clear that someone else . . . more likely did the downloading," is <u>pure</u> speculation. Defendant's Motion, at p. 8. Defendant did not see, hear, smell, touch, taste or otherwise perceive in any other way a third party committing the infringement. Accordingly, Defendant is precluded from testifying that a third party committed the infringement at trial. Indeed, Federal Rule of Evidence 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

To be clear, Defendant did not perceive, within the meaning of Fed. R. Evid. 701, a third party using his wireless router to infringe Plaintiff's copyrights. "Speculative testimony is generally not admissible because it is not based on the witness's perception." *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1268 (N.D. Ala. 2011) citing *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993). "A Rule 701 witness cannot simply assert conclusions; his testimony must rest upon an antecedent predicate and foundation." *KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1265, 1274 (M.D. Ala. 2001).

Similarly, Defendant did not perceive any evidence of a "framed" IP address, being implicated in a swarm without participating, mistimed reports, or a computer running malware.

Because any testimony that Defendant might give at trial related to these defenses is not based on Defendant's perception, such testimony is inadmissible and Defendant is precluded from providing speculative testimony. Defendant cannot prevail "with [only] speculative assertions unsupported by any record evidence." *Woods v. Paradis*, 380 F. Supp. 2d 1316, 1330 (S.D. Fla. 2005).

### H. A Jury Would Not Be Permitted to Find That a Third Party Outside of Defendant's Residence Committed the Infringement

Because Defendant has no evidence to support the argument that a third party committed the infringement, he cannot argue it to a jury. This is because the jury could not permissibly make that finding or infer that it could have taken place. "[A]n inference is not reasonable if it is 'only a guess or a possibility,' for such an inference is not based on the evidence but is pure conjecture and speculation. This proposition is undoubtedly sound." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982). Under *Daniels's* binding precedent, "a jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility. Such an inference is infirm because it is not based on the evidence." *Id.*, at 1326.

Here, there is no witness that can testify that a third party living outside of Defendant's residence committed the infringement, or that the other speculative defenses occurred. Therefore, the jury would not be permitted to find that a third party living outside Defendant's home committed the infringement or that any of the other speculative defenses occurred. Based upon the foregoing and because no reasonable jury could conclude that Defendant's wife was more likely to commit the infringement than Defendant, Plaintiff is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion for Summary Judgment.

Dated: August 8, 2013

Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:   /s/ *M. Keith Lipscomb*