UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MALIBU MEDIA, LLC,    )
                      )
    Plaintiff,        )    Civil Case No. 1:12-cv-22767-PAS
                      )
v.                    )
                      )
MARK FITZPATRICK,     )
                      )
    Defendant.        )
_____)

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT
OF UNDISPUTED MATERIAL FACTS**

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned counsel, and pursuant to Local Rule 56.1(a), files this Response to Defendant's Statement of Undisputed Material Facts (CM/ECF 24-1), and states:

**Paragraph 1**

**Sentence 1**: **Admitted**. "Plaintiff Malibu Media, LLC brought claim against Defendant Mark Fitzpatrick for the alleged infringement of its protected works. *See generally* Am. Compl. [DE 5]."

**Sentence 2**: **Admitted. Plaintiff also alleged that its works were infringed on all of the dates listed on CM/ECF 5-2.  *See also* CM/ECF 25-3 at \*6-7**   "Plaintiff has alleged that its protected works were infringed on three (3) separate occasions, including: (1) February 1, 2012 at 3:26 a.m. EST; (2) February 9, 2012 at 12:07 p.m. EST; and (3) February 11, 2012 at 5:33 a.m. EST.1 Am. Compl., Exh. A."

1

**Sentence 3**: **Denied**.  *See* **Plaintiff's Motion For Summary Judgment at CM/ECF 25; Plaintiff's Statement of Undisputed Material Facts at CM/ECF 25-1 and Exhibits A-R at CM/ECF 25-2 – 25-19.  All of the evidence demonstrates that Defendant is the infringer.**

"In bringing this copyright infringement claim Plaintiff concedes that it lacks certainty as to who is the actual infringer of its protected works. Am. Compl. ¶¶ 23-24."

**Sentence 4**:  **Admitted**.  "Plaintiff brought this claim against Defendant based on the rationale that because Defendant is the subscriber of the Internet service in connection to the infringing IP address, 67.205.241.239, he is "the most likely infringer". Am. Compl. ¶ 23."

**Sentence 5**:  **Admitted and Denied**. "Plaintiff acknowledges the speculative nature of its claim and plainly stated that "Defendant is the only person who can be identified as the infringer at this time." Am. Compl. ¶ 24."  **Plaintiff admits that it stated:** "Defendant is the only person who can be identified as the infringer at this time" but **Plaintiff denies that its claim is speculative.** *See* **Plaintiff's Motion For Summary Judgment at CM/ECF 25; Plaintiff's Statement of Undisputed Material Facts at CM/ECF 25-1 and Exhibits A-R at CM/ECF 25-2 – 25-19.**

**Paragraph 2**

**Sentence 1**:   **Denied**.  *See* **Plaintiff's Motion For Summary Judgment at CM/ECF 25; Plaintiff's Statement of Undisputed Material Facts at CM/ECF 25-1 and Exhibits A-R at CM/ECF 25-2 – 25-19.  The evidence demonstrates Defendant is not being truthful.**  "Prior to this suit, Defendant had never heard of the BitTorrent Protocol nor a peer-to-peer sharing network. Ex A at 62:6-11; Ex. E at 2."

**Sentence 2:**   **Admitted, except to the extent it says "confirmed" instead of "testified".**  "Defendant's wife, Yvonne Chen, who has lived with him during all relevant times, confirmed

that she had also never heard of the BitTorrent Protocol nor a peer-to-peer sharing network. Ex. B at 44:25-45:2."

### Paragraph 3

**Sentence 1:   Admitted that Defendant has "stated" but Denied as to its truth.  *See* Plaintiff's Motion For Summary Judgment at CM/ECF 25; Plaintiff's Statement of Undisputed Material Facts at CM/ECF 25-1 and Exhibits A-R at CM/ECF 25-2 – 25-19. All of the evidence demonstrates Defendant is not being truthful.**  "Defendant has stated that without any doubt he has never seen nor downloaded the subject works in this suit. Ex. A at 63:18-20; 67:15-19; 77:2-4; 78:6-12; Ex. E at 3."

**Sentence 2:   Admitted, except to the extent it says "confirmed" instead of "testified".**  "Defendant's wife has also confirmed that she has never seen nor participated in the downloading of the subject works. Ex. B at 44:1-14."

### Paragraph 4

**Sentence 1:   Denied.  Plaintiff's corporate representative testified that she did not know whether it is possible for multiple people to access the same IP address.  *See* Ex. A at 53:15, 54:6.  Further, Plaintiff's counsel objected on the basis that it called for speculation and was outside the scope.  See Ex. A at 53:1-3, 53:13-14.**  "Plaintiff's corporate representative confirmed that it is possible for multiple people to access the same IP address. Ex. D at 51:20-53:15; 139:7-18."

**Sentence 2:   Denied.  Plaintiff's corporate representative repeatedly testified that Defendant was the infringer.  *See* Ex. A at 48: 5-12, 56: 18-23, 57-58: 21-2.**  "More importantly, the representative confirmed that Plaintiff has no idea who downloaded the

copyrighted works, specifically whether the infringer was the Defendant or simply someone else who accessed the Defendant's wireless network. Ex. D at 61:7-63:10."

### Paragraph 5

**Sentence 1:** Admitted.  Defendant and his wife have been residents of the Epic in downtown Miami, a 54-story mixed hotel and condominium building, since October 2011. Ex. A at 18:10-14; 18:25-19:4; 19:9-10; Ex. E at 5.

**Sentence 2:** Admitted.  Defendant's condominium is located on the 31st floor and is one (1) of fourteen (14) units on that floor. Ex. A at 18:10-14; Ex. E at 5; Ex. B at Depo. Ex. B.

**Sentence 3:** Admitted.  Defendant condominium building is 54 stories high with approximately 14 units per floor, which equates to more than 300 total units in the building. Ex. B at Depo. Ex. B; Ex. F.

### Paragraph 6

**Sentence 1:** Admitted.  "The Epic requires that its residents use Hotwire as their Internet provider. Ex. A at 30:11-14."

**Sentence 2:** Admitted.  "As such, Defendant used Hotwire as the Internet provider for his place of residence.  Ex. A at 30:11-14."

### Paragraph 7

**Sentence 1:** Admitted.  In order to discover the identity of Defendant in this case, Plaintiff sent a subpoena to Hotwire requesting the subscriber information associated with certain IP addresses that it allegedly identified as infringing. Ex. C at Depo. Ex. B.

**Sentence 2:** Admitted.  The subpoena requested the subscriber information associated with the IP address 67.205.241.239 at the specific time of February 8, 2012 at 9:44 p.m.[2] Ex. C at Depo. Ex. B.

4

**Sentence 3:**   **Admitted.**  Defendant's information was identified as having been associated with that IP address at that particular moment. Ex. C at 12:5-13:9; Depo. Ex. B & C.

### Paragraph 8

**Sentence 1**:   **Denied.  Hotwire's corporate representative did not confirm any lack of accuracy regarding this method.** *See* **CM/ECF 25-5.**  "Hotwire's corporate representative confirmed the lack of accuracy with this method by stating that Hotwire had no opinion as to who the subscriber was at any times different than the subpoena time provided by Plaintiff. Ex. C at 20:20-24; 23:15-22; 24:2-16; 27:14-24; 29:3-30:5; Depo. Exs. C, D & E."

**Sentence 2:**   **Admitted.**  "She also stated that while Hotwire "could identify the account holder of the IP address, but there's no way to know who actually logged in, if there was a visitor, guest or something at that account holder's unit." Ex. C at 13:3-14:5."

**Sentence 3:**   **Admitted.**  "Further stating that, "Hotwire does not maintain individual records of users of the Internet…". Ex. C at 13:8-9."

**Sentence 4:**   **Admitted.**  "Lastly, she confirmed that Hotwire IP addresses are "dynamic". Ex. C 18:9-19:2; 21:11-22:4; 19:6-10."

**Sentence 5:**   **Denied.  Hotwire testified that each IP address was assigned for at least twenty-four hours.** *See* **CM/ECF 25-5 at 31:4-25; 32:1-10.**  "As such, an IP address can be assigned to a subscriber for as little as a couple hours and then switch to another subscriber—a concept known as "lease time". Ex. C 18:9-19:2; 19:6-10; 21:11-22:4."

### Paragraph 9

**Sentence 1:**   **Admitted.  MAC addresses can be changed by a Defendant after the infringement occurred and therefore cannot be relied upon to accurately correlate the source from which the infringement emanated.**  "At no point in time did Plaintiff request a

5

MAC address from Hotwire in order to identify the device that initiated the downloads. Ex. C at Depo. Ex. B."

**Sentence 2:** **Admitted and Denied.  Admitted** **that Plaintiff never examined Defendant's computer.  Plaintiff specifically requested multiple times during discovery that Defendant provide Plaintiff with copies of his hard drives and he refused to do so.  See CM/ECF 29 at \*6-10.  Denied** **that Plaintiff never examined the wireless router in question.  Plaintiff provided a declaration stating that it examined the wireless router in detail.  See CM/ECF 25, Ex. I.**  "Furthermore, Plaintiff has never examined the wireless router in question nor Defendant's computer. Ex. D at 52:13-22."

### Paragraph 10

**Sentence 1:** **Denied.  The undisputed facts establish that Defendant's guest network was password protected and encrypted at all relevant times.  See CM/ECF 25, Ex. I at ¶ 19, 22-25.**  "Defendant has confirmed that during all relevant times the wireless router in his residence had an operating guest function and as result, it was open for anyone to access and use. Ex. E at 4; Ex E, Aff. Ex. 1."

**Sentence 2:** **Denied.  See  Id.**  Defendant made this discovery following communications with a computer technician. Ex. E at 4; Ex E, Aff. Ex. 1.

**Sentence 3:** **Admitted**.  As new parents, Defendant and his wife had purchased and installed a baby monitor made by a company called WifiBaby.net ("WifiBaby") that accessed their wireless network. Ex. E at 4; Ex E, Aff. Ex. 1.

**Sentence 4:** **Admitted.**  When they discovered the monitor was not working properly, they called a technician from WifiBaby to look at it. Ex. E at 4; Ex E, Aff. Ex. 1.

6

**Sentence 5:** **Admitted and Denied.** **Admitted** that Defendant's technician sent Defendant the email. **Denied** that the contents in that email were accurate or true. The undisputed facts establish that Defendant's guest network was password protected and encrypted at all relevant times. Without a password, his neighbor could not have used his wireless Internet to access or surf the Internet. *See* **CM/ECF 25, Ex. I at ¶ 19, 22-25.** After reviewing the wireless router, the technician sent an email to Defendant stating that he "determined that [Defendant's] wireless router was broadcasting on a channel that [his]neighbor was using as well which could very well interfere [his] wifi transmissions…" and that "[his] wireless router was configured to provide a guest SSID that was openly allowing anyone to surf the net using [his] already limited bandwith." Ex. E at 4; Ex E, Aff. Ex. 1.

### Paragraph 11

**Sentence 1:** **Admitted.** Plaintiff has alleged that Defendant infringed Plaintiff's works 68 different times. One of these times was at 12:07 p.m. EST on February 9, 2012. *See* **CM/ECF 5-2;** *see also* **CM/ECF 25-3 at \*6-7.** Plaintiff has alleged that one of the three infringements by Defendant took place at 12:07 p.m. EST on February 9, 2012. Am. Compl., Exh. A.

**Sentence 2:** Admitted, however that does not absolve Defendant of liability because the software which enables the BitTorrent protocol to work (aka a "BitTorrent client") continues to distribute data so long as the computer is on and the user did not instruct the client to stop distributing data. The operation of the BitTorrent protocol is not dependent upon an individual's presence at the computer. "The nature of the BitTorrent protocol provides for continuous seeding and distributing of a file long after it has downloaded. Without stopping the program by physically un-checking the automatic seeding, an alleged

7

**infringer will seed and distribute a movie for an extended period of time."** *See* **CM/ECF 25-3, at ¶ 18. Defendant proffered no evidence that he disabled automatic seeding or disconnected from the swarm.** *See* **Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at \*11.** "However, Defendant was at work approximately 40 minutes away from his home at the time he was allegedly downloading one of Plaintiff's protected works. Ex. E at 5; Ex. E at Aff. Ex. 2."

**Sentence 3:** **Admitted.** On February 9, 2012 at 11:47 a.m., Defendant was at work and sent an email to his wife (email: ychen@carnival.com) in which he described his current work to his wife. Ex. E at 5; Ex. E at Aff. Ex. 2.

**Sentence 4:** **Admitted.** In this email Defendant stated: "An Ecuadorian family office. No money yet but we just agreed to a plan. **Back to work….** [emphasis added]." Ex. E at 5; Ex. E at Aff. Ex. 2. Defendant's place of employment, Crystal Capital Partners, LLC, is located at 1111 Kane Concourse #404, Bay Harbor Islands, FL 33154, approximately 40 minutes from his place of residence. Ex. E at 5; Ex. E at Aff. Ex. 2.

In conclusion the facts identified above are contested.

Dated: August 8, 2013

                                                    Respectfully submitted,

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile: (786) 431-2229
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *M. Keith Lipscomb*