UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MALIBU MEDIA, LLC

        Plaintiff,

v.

MARK FITZPATRICK,

        Defendant.
_____/

Case No. 1:12-CV-22767

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES

THIS CAUSE came before the Court on the parties' cross Motions for Summary Judgment [DE 24, 25]. This is a BitTorrent,[1] Copyright Infringement case. Plaintiff Malibu Media, LLC ("Malibu") makes pornographic movies which it distributes via a paid subscription-based website. Internet piracy undercuts Malibu's potential business and to stem non-subscriber access to its content Malibu routinely monitors BitTorrent networks for unauthorized distribution of its films. This case arose out of such efforts.

---

[1] BitTorrent is a computer file-sharing protocol. It utilizes a peer-to-peer network composed primarily of personal computers to share digital content. To share content via BitTorrent a "seeder" uploads the digital material and creates a torrent file that contains (1) a unique string of alphanumeric characters used to verify the data and (2) a "roadmap" to the IP addresses of other users. *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 674 (S.D. Fla. 2011). The content is disassembled and several users, known as a "swarm," download certain pieces of the content to their individual computers. The torrent file then directs the user's computer to others in the swarm who have pieces of the file the user needs to make a complete copy. Once the missing pieces are downloaded from the other swarm computers, they are sequenced and reassembled on the user's computer. *Bubble Gum Prods., LLC v. Does 1-80*, 2012 WL 2953309 (S.D. Fla. 2012).

1

Malibu alleges Defendant used BitTorrent to download and redistribute three of its movies. Defendant denies the allegation, denies ever having used BitTorrent, and even denies knowing what BitTorrent was before Plaintiff brought this suit against him. The parties have cross-moved for summary judgment on the sole claim of direct copyright infringement. Having reviewed the motions, oppositions [DE 27, 28], replies [DE 32, 34], and the record, both motions must be denied because there remains a disputed issue of fact, namely, whether Defendant downloaded or shared Plaintiff's movies. However, summary judgment will be granted for Plaintiff as to ten of Defendant's fifteen affirmative defenses because Defendant has not met the threshold showing that any of these defenses are applicable.

I.  **BACKGROUND**[2]

  A. *Factual Basis of Malibu's Infringement Claim*

IPP, Limited ("IPP") is an investigations firm that monitors BitTorrent networks for Malibu. Sixty-eight times between January 3 and February 12, 2012,[3] an IPP investigative server received pieces of Plaintiff's three movies from a computer in a BitTorrent swarm that an IPP investigator tracked to Internet Protocol ("IP") address 67.205.241.239. The IP address belonged to Hotwire Communications ("Hotwire"), a Pennsylvania-based Internet Service Provider ("ISP"). Plaintiff issued a subpoena to Hotwire requesting to know the identity of the Hotwire subscriber who had been assigned IP address 67.205.241.239 on February 9, 2012 at

---

[2]  Unless otherwise noted the background facts are taken from the undisputed record evidence.

[3]  Defendant misunderstands the scope of Plaintiff's allegation. Defendant alleges that Plaintiff is claiming that infringing transactions occurred on three occasions, which are the times listed on Exhibit A of the Complaint. [DE 24, p. 10]. This is incorrect. Exhibit A sets out that three titles were infringed and provides registration dates for the copyrights. The purpose of Exhibit A was to provide the copyright information for the three Malibu titles at issue. Exhibit B shows the frequency of infringement. Defendant has raised an alibi that he was at his office several miles away from his home computer when one of the infringements on Exhibit A occurred. Without reaching either the merits of the defense or Plaintiff's rejoinder that BitTorrent shares data automatically unless a user affirmatively acts to stop it, even if it Defendant's alibi were accepted as fact, it would *not* be dispositive as to his liability for infringement of this single title given that Exhibit B shows that this same title was infringed 28 other times.

2:44 UTC.[4]  Hotwire responded that Defendant was the subscriber assigned that IP address at 2:44 UTC on February 9, 2012.

       *B. Access to Defendant's Internet Connection by an Unidentified Third-Party*

Defendant admits he was a Hotwire subscriber but denies downloading or sharing Malibu's films. Defendant also denies using the BitTorrent protocol and even knowing what BitTorrent was before this lawsuit was filed. Defendant advances two theories for how his IP address came to be implicated in what he contends was someone else's illegal downloading. The first is that IPP tracked the wrong IP address. Though Defendant has introduced a scholarly article on the topic, there is no record evidence from the case that suggests this happened here.[5] The second theory is that someone within the physical usable range of Defendant's wireless internet ("wi-fi") connection, used Defendant's internet connection to download and share Plaintiff's movies.

As to this second theory, the circumstantial evidence cuts both ways. Defendant and his wife lived in a 300 unit, 30 story condominium building.[6] The unit had wi-fi, but the connection

---

[4] IP addresses are variably assigned under a concept known as "lease time." (Deposition of Laurie M. Murphy, DE 25-5, p. 31 9:18). A period of inactivity may cause the IP address to be reassigned to another subscriber. The lease time for subscribers in Defendant's condo building was twenty-four hours. A Hotwire subscriber in Defendant's building whose connection to the internet was not used for twenty-four hours would lose his "lease" on the assigned IP address and it would be transferred to another user. It is unclear why the subpoena only requested the subscriber's identity for this single time, despite IPP having tracked the address for over six weeks and connecting with the computer that used the address 68 times.

[5] Defendant points to a study on the weaknesses in the detection methods used to track IP addresses including the use of "framed" IP addresses, or users concealing their own address with another's. However, the study is not conclusive as to whether IP framing can occur in cases of direct detection. *See* Tadayoshi Kohno, Michael Piatek & Arvind Krishnamurthy, *Challenges and Directions for Monitoring P2P File Sharing Networks – or – Why my Printer Received a DMCA Takedown Notice*, University of Washington Technical Report, UW-CSE-08-06-01, DE 24, p. 14 – 20.

[6] Neither party has claimed that Defendant's wife might have been the infringer. Malibu states that it is more likely that Defendant was the infringer, because by large margin the viewers of Malibu's content are male. (Declaration of Colette Pelissier Field, DE 25-2, ¶18).

3

speed through most of the unit was slow.[7] Defendant's router ran two networks, a main network and a guest network.[8] On setup, the router automatically password protects the guest network; a guest user can connect to the network but cannot access the internet without a password.[9] In April 2013, a technician from a baby monitor company inspected Defendant's network for reasons unrelated to this case and concluded that his guest network was "open[,] allowing anyone to surf the net." (Errol Hunter E-mail, DE 24-6).[10] It is unclear though, whether by "open" the technician meant open just for connection to the guest network or open for web browsing without a password. In an affidavit filed in support of his motion, Defendant claims to have "confirmed that the router had the guest access function available and [that] it was open" (Affidavit of Defendant in Support of Defendant's Motion for Summary Judgment, 24-6, ¶ 4), but like the technician's statement, Defendant's affidavit does not clarify what "open" means. As such, it is unclear whether an interloping neighbor could access Defendant's internet without knowing his password.

### C. Substantial Gaps in the Record Evidence

---

[7] The Lynksys E1550 router provides optimum coverage and signal strength when it is centrally located, and is placed away from metal, and physical and electronic obstructions. (Linksys E1550 User Guide, DE 25-11, p. 5) Defendant's router was located in a metal box inside his bedroom closet. The interior walls of the condo were three inches think and made of insulated drywall.

[8] Defendant's main, non-guest network was at all times password protected with an eight digit password that he supplied. A guest network allows those within its signal range to access the internet but restricts access to other resources on the network. Neither Defendant nor his wife can recall who set up the router.

[9] The router's user manual states "The guest network is shown as an open, unsecure wireless network that your guests can easily connect to. To prevent unauthorized users from using your Internet access, your guest network requires that a password be entered for Internet access." [DE 25-11, p. 12]. The manual does not state whether the guest network's password function could be disabled such that someone could access the internet via the guest network without knowing the password.

[10] Plaintiff claims the technician's statements, which are contained in an email from the technician to Defendant, are inadmissible hearsay and should not be considered on summary judgment. Because the technician's observation that the guest network was "open" could be introduced at trial by simply calling the technician as a witness, the statements may be considered at the summary judgment stage. *See Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (stating that a district court may consider a hearsay statement at summary judgment provided the hearsay statement can be "reduced to admissible evidence at trial.")

4

The record in this matter has many gaps. The baby monitor technician was never deposed and therefore could not clarify what he meant when he wrote that the guest network was "open." There is no expert testimony as to the range of Defendant's wireless internet. Without such testimony it is unclear whether a neighbor could have accessed the network in the first place.[11] Moreover, neither party has introduced forensic evidence from Defendant's computer or router that would make it more or less probable that Defendant had downloaded the videos or used BitTorrent.[12]

## II. CROSS MOTIONS FOR SUMMARY JUDGMENT ON DIRECT INFRINGEMENT MUST BE DENIED

*A. Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

---

[11] Plaintiff attempted to file an affidavit of an expert in wireless internet connectivity, however, for the reasons set out in the contemporaneously issued Order Striking the Affidavit of Ernesto Rubi, such evidence will not be considered.

[12] Plaintiff requested copies of Defendant's hard drives in discovery in order to forensically analyze them but the parties were unable to agree to the manner and scope of Plaintiff's investigation. Defendant's hard drives and other computer equipment were never turned over nor were they subpoenaed or otherwise compelled by court order.

of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

> B. *The Record Evidence Does Not Support the Entry of Summary Judgment as to Infringement for Either Party*

By filing cross-motions for summary judgment, the parties agree that there is no issue of material fact and the sole issues are questions of law for the Court's determination. However, "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed. . . ." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Here, a thin evidentiary record has left the fundamental question in the case unanswered and neither side, as moving party, has shown an absence of material issue of fact for trial.

> 1. Plaintiff's Motion for Summary Judgment Must Be Denied

For Plaintiff to prevail on its motion for summary judgment it must show that there is no dispute that Defendant downloaded and shared its movies.[13] Plaintiff's principal evidence that Defendant infringed its copyright is that Defendant's ISP named Defendant as being the

---

[13] To prevail on its direct copyright infringement claim Plaintiff must prove that (1) it owned a valid copyright on its movies and (2) Defendant copied them. *Feist Publ'ns Inc. v. Rural Tel. Serv's. Co. Inc.*, 499 U.S. 340, 361 (1991). Only the second element is disputed.

6

subscriber who was assigned IP address 67.205.241.239 at 2:44 UTC on February 9, 2012. Simply identifying that a defendant's IP address was used to commit an infringement is not dispositive of the defendant actually having been the individual who committed the infringement. *See Bubble Gum Prods., LLC v. Does 1-80*, 2012 WL 2953309 (S.D. Fla. 2012). Plaintiff has not produced *any* real or testimonial evidence that Defendant himself downloaded or redistributed the copyrighted works.[14] Plaintiff's motion for summary judgment must be denied because there remains a disputed issue of material fact, namely, whether Defendant downloaded or redistributed Plaintiff's movies thereby infringing its copyright.

2. Defendant's Motion for Summary Judgment Must Also Be Denied

Similarly, for Defendant to prevail on his motion, he must show there is no disputed issue of fact that he *did not* download or distribute Plaintiff's works.[15] Defendant has not made this showing. On setup Defendant's router automatically requires users on the guest network to input a password in order to use the guest network internet. Defendant has three theories as to how a neighbor could have connected to his guest network – (1) the router was set up to allow the guest network to be accessed to the internet without a password; (2) the router was "hacked," meaning

---

[14] Plaintiff argues that the gap in its real evidence should be supplanted by an inference that Defendant did in fact commit infringement because if Defendant were innocent, he would have introduced his computer hard drive as exculpatory evidence. Plaintiff has not provided any legal authority to justify that such an inference is warranted here. Defendant was not compelled by a court order to produce his computer equipment nor has Plaintiff alleged that Defendant spoliated evidence. Moreover, the record evidence suggests that Defendant was amenable to having his computer equipment reviewed, but that the parties were unable to reach an agreement as to how to limit the intrusion into Defendant's data that was either privileged or irrelevant. Under the circumstances, such an inference is not warranted at summary judgment; however, the fact of defendant's non-production *may* be relevant at trial.

[15] Plaintiff connects Defendant to the transaction at 2:44 UTC on February 9, 2012 via its subpoena to Hotwire. But the infringing activities that occurred at 2:44 UTC only involved one of the three titles at issue. [DE 5, Ex. B, p. 5]. To connect Plaintiff to the infringement of the other two titles, Plaintiff uses a statistical analysis that shows a 1% or less chance that Hotwire assigned the same IP address to *more than one* individual in Florida who downloaded and redistributed the movies at issue. [DE 28, p. 6 – 8]; [DE 34, p. 2]. The implication of this analysis is that Defendant was the subscriber assigned the address the entire time that IPP conducted its investigation and that Defendant infringed the copyrights on all three movies. Had Plaintiff's subpoena not been limited to only a single minute of a single day during this six week time frame, it may have been clearer whether Defendant himself was the subscriber assigned IP address 67.205.241.239 for relevant timeframe. Whether or not Defendant was the subscriber assigned IP address 67.205.241.239 between January 3 and February 12, 2012, remains a disputed issue of fact.

7

its password feature was externally overcome and it could be used to access the internet; or (3) the infringer knew the password, which may have been "admin", a default password.[16] [DE 27, p. 4]. The second and third theories are speculative and unsupported by any record evidence. It is unclear whether the first is even possible. Defendant states in an affidavit that he confirmed the guest network was "open." [DE 24-6, ¶4]. However, Defendant's characterization of the network as "open" suffers from the same ambiguity as the technician's; neither resolves whether the guest network was, or even could have been configured to allow a guest to use the internet without a password. Given that Defendant's denial is not corroborated by conclusive evidence, his motion for summary judgment must be denied.

### III. SUMMARY JUDGMENT IS GRANTED AS TO DEFENDANT'S THIRD, FIFTH, SIXTH, SEVENTH, EIGHTH, NINTH, TWELFTH, THIRTEENTH, FOURTEENTH, AND FIFTEENTH AFFIRMATIVE DEFENSES[17]

Plaintiff also seeks summary judgment on twelve of Defendant's fifteen affirmative defenses. "On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable," *Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla.1997) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir. 1990)), and it is "[o]nly upon such a showing [that] the burden shift[s] to [a] plaintiff regarding that affirmative defense," *Paul*, 985 F. Supp. at 1470 (citing *Weitz*, 913 F.2d at 1552 n.13). Practically, this means that "[t]he non-moving party may not [simply] depend

---

[16] Plaintiff contends that "admin" is the default password for the Lynksys model E1500 router, not Defendant's Lynksys E1550 router. [DE 34, p. 4]

[17] Defendant's fourth affirmative defense, failure to mitigate damages, is obviated by Plaintiff's representation that it only seeks statutory damages. [DE 25, p. 12]. Defendant states that if Plaintiff withdraws its claim for actual damages, he will withdraw his fourth affirmative defense. Plaintiff's representation will be construed as its withdrawal of claiming actual damages and accordingly, Defendant's fourth affirmative defense is stricken. In Defendant's tenth affirmative defense he contends that Plaintiff is not entitled to injunctive relief because Plaintiff's alleged injuries are neither immediate nor irreparable. Such a statement is merely a denial and not an affirmative defense. It is therefore stricken. Defendant has voluntarily withdrawn his eleventh affirmative defense - lack of originality.

8

upon the mere allegations or defenses in his Answer to counter [a motion for summary judgment]." *Keybank Nat. Ass'n v. Willoughby*, 2010 WL 3212086, at *3 (M.D.Fla. 2010) (citing *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587). Here, Defendant's affirmative defenses fail because Defendant has not shown that any of his proffered defenses are supported by the record evidence and are, therefore, applicable.

### A. De Minimis Non Curat Lex (III)

Defendant argues that under the doctrine of *de minimis non curat lex* even if he is found to have downloaded or redistributed Plaintiff's works, his infringement was so insubstantial as to be non-actionable. Summary judgment is warranted because Defendant has not produced any evidence that his alleged use was qualitatively and quantitatively *de minimis*. *See Peter Letterese and Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1306 – 07 (11th Cir. 2008) (emphasizing that *de minimis* use claims must address both the qualitative and quantitative dimensions of the use). The record evidence regarding the quantity of the alleged infringement is scant. There is some evidence to suggest that Defendant may have distributed copies of Plaintiff's works 68 times, but it is unclear how much of any of Plaintiff's works were distributed. There is no evidence of the qualitative significance of what was distributed in the record and as such there is no way to measure the "importance of the portion copied" or distributed. *Id.* As such, Defendant has not shown that his affirmative defense is viable and Plaintiff is entitled to summary judgment.

### B. Innocent Infringement (V)

Defendant also claims that if he is found liable for infringement that damages should be waived or eliminated because his conduct was not willful and that he acted in good faith. The "innocent infringer" defense is not a true defense but a limitation on damages that is only

9

applicable if the infringer proves that he was unaware that the works had been copyrighted. In such a case the Court has discretion to lower minimum statutory damages from $750.00 to $200.00 per work. 17 U.S.C. § 504(c)(2).

Where the infringed works contain notice of copyright, a defendant's claim of innocent infringement carries no evidentiary weight. 17 U.S.C. § 401; *cf. Maverick Recording Co. v. Harper*, 598 F.3d 199, 199 (5th Cir. 2010) (holding the innocent infringer defense foreclosed in illegal downloading cases where the publicly available source material, a compact disc, featured copyright notice). Here, it is undisputed that two of the three titles at issue had copyright marks directly on the works. As to the third work, it is undisputed that Plaintiff's website, the primary means by which Plaintiff's content is legitimately distributed, claimed that all of its works were copyrighted. As such, summary judgment must be granted to Plaintiff on the defense.

### C. Due Process (VI)

Defendant argues that due process limits the imposition of statutory damages and fees to not more than 10 times the amount of actual damages. Defendant has not cited any authority for the proposition that due process requires damages to be capped as he proposes. To the contrary, the First Circuit recently upheld statutory damages of $675,000 on a due process challenge where the Defendant was liable for illegally downloading 30 songs for his own non-commercial use. *Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67 (1st Cir. 2013). The Court explained that statutory damages need not necessarily be proportionate to actual damages because statutory damages also serve a deterrent function. *Id.* at 71. The same reasoning is applicable here and Plaintiff is similarly entitled to summary judgment on the defense.

### D. Joinder (VII)

Plaintiff's motion for summary judgment is also granted as to the defense of failure to join an indispensable party. Rule 19(a) requires that a party be a joined if its absence would prevent the existing parties from obtaining complete relief or the absent parties non-inclusion in the case would prejudice that party's rights. Under Rule 19(b) the Court has discretion to dismiss an action on the grounds that a party is indispensable. Defendant ignores Rule 19's rationale and instead argues that joinder is required because of the unique nature of the BitTorrent protocol. Defendant is correct in stating that BitTorrent necessarily requires more than one participant. His argument seems to be that some other BitTorrent user is indispensable because that user and Defendant are joint tortfeasors. It is well-settled, however, that joint tortfeasors are not indispensable parties to a case. *Herpich v. Wallace*, 430 F.2d 792, 817 (5th Cir. 1970) ("Rule 19 . . . was not meant to unsettle the well-established authority to the effect that joint tortfeasors or coconspirators are not persons whose absence from a case will result in dismissal for non-joinder.").[18] Defendant offers no other argument for why another party is indispensable to the action and therefore Plaintiff is entitled to summary judgment on Defendant's non-joinder defense.[19]

### E. License (VIII) , Unclean Hands (IX), Estoppel (XIII), Waiver (XIV), Forfeiture (XV)

Defendant's eighth (license, consent, and acquiescence), ninth (unclean hands), thirteenth (estoppel), fourteenth (waiver), and fifteenth (forfeiture) defenses all essentially aim to justify

---

[18] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[19] The non-joinder defense in the BitTorrent context fails under a Rule 19 analysis as well. As Judge Baylson noted in *Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 *9 (E.D. Pa. 2013), "To prevail against each [defendant], Malibu needs to prove that each [defendant] downloaded its copyrighted material without authorization. The Court will be able to adjudicate these matters and to "accord complete relief" whether or not the other members of the swarms, who allegedly also infringed Malibu's works, are present or not."

Defendant's alleged infringement on the basis of Plaintiff's conduct in the enforcement of its copyright. Defendant's pleading with regard to all of these defenses is identical. Defendant claims that Plaintiff's claims are barred because "Plaintiff authorized use [of its works] via Bit Torrent, including Plaintiff's and/or Plaintiff's agents' participation in the alleged BitTorrent Swarm." [DE 10, ¶ 45, ¶ 50, ¶ 51, ¶ 52]. Summary judgment must be granted for Plaintiff as to these defenses.

Defendant's allegation that Plaintiff itself initially seeded the torrent with copies of its works in an effort to ensnare would-be infringers is unsupported by the record. Despite deposing Plaintiff's corporate representative, propounding a request for admission, two sets of interrogatories and two requests for production, Defendant has not produced any evidence that Plaintiff released its content via BitTorrent. Insofar as Defendant alleges that by Malibu's investigators receiving pieces of its work in a torrent swarm in furtherance of their investigation, Plaintiff has (1) licensed the use of its copyright, (2) contributed to the infringement of its own copyright, (3) should be equitably estopped from claiming infringement, (4) has waived a claim to infringement, or, (5) has forfeited the copyright all together, these arguments are unavailing. Plaintiff argues that Defendant has not met the elements of any of these five legal theories under the summary judgment standard. Defendant has not taken the opportunity in its opposition to explain how the record evidence relating to Malibu's investigator's tactics supports any of these theories and as such, summary judgment must be granted to Plaintiff on these defenses.

### F. *Invalidity (XII)*

Finally, summary judgment must be granted to Plaintiff on Defendant's Twelfth Affirmative Defense, invalidity of copyright. Defendant states that *if* Malibu's works are obscene, they *may* not be entitled to copyright. Though Malibu's works are pornographic,

Defendant has not brought forth any evidence that they are obscene. As such, Plaintiff must be granted summary judgment on Defendant's twelfth affirmative defense.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED THAT

(1) Defendant's Motion for Summary Judgment [DE 24] is **DENIED**.

(2) Plaintiff's Motion for Summary Judgment [DE 25] is **GRANTED IN PART AND DENIED IN PART** as is set out above.

(3) The parties shall file their Joint Pretrial Stipulation by November 4, 2013 in accordance with the Order Setting Trial Date [DE 12].

DONE AND ORDERED in Miami, Florida, this 17th day of October 2013.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: Honorable Andrea M. Simonton
All counsel of record

13